UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL FRAZIER THOMPSON,

    Petitioner,                                                CASE NO. 2:19-cv-13438

v.                                                         HONORABLE SEAN F. COX

WILLIS CHAPMAN,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Carl Frazier Thompson, a state inmate in the custody of the Michigan Department of Corrections, filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The habeas petition challenges Petitioner's plea-based convictions for five counts of criminal sexual conduct (CSC) and one count of failing to comply with Michigan's Sex Offenders Registration Act (SORA). Petitioner claims that the state trial court abused its discretion by denying his combined motion to withdraw his guilty plea and dismiss his trial attorney. The last state court to adjudicate these claims in a reasoned opinion was the Michigan Court of Appeals, and it rejected the claims "for lack of merit." Because that decision was objectively reasonable, Petitioner has no right to habeas corpus relief under § 2254. Accordingly, the Court will deny the habeas corpus petition. The Court also declines to issue a certificate of appealability or to allow Petitioner to proceed *in forma pauperis* on appeal.

### I. Background

### A. The Charges and Guilty Plea

Petitioner was charged in St. Clair County, Michigan with two counts of first-degree CSC, Mich. Comp. Laws § 750.520b (multiple variables), three counts of second-degree CSC, Mich. Comp. Laws § 750.520c (multiple variables or complaining witness under the age of thirteen), and one count of failing to comply with SORA, Mich. Comp. Laws § 28.729. On the date set for trial (September 29, 2015), the prosecutor read the six charges aloud in St. Clair County Circuit Court and informed the trial court that Petitioner would be pleading guilty as charged. (ECF No. 9-3, PageID.104-105.)

The prosecutor stated that, in exchange for Petitioner's plea, the prosecution would reduce a habitual offender notice from fourth habitual offender to third habitual offender. (*Id*. at PageID.105.) The prosecutor explained that, as a result of this reduction in Petitioner's habitual offender status, counts three through five would carry a thirty-year maximum sentence, and count six would carry an eight-year maximum sentence. (*Id*.) Although the first-degree CSC counts remained life offenses under the plea agreement, the prosecutor agreed not to seek consecutive sentences on those counts. (*Id*.) The prosecutor also agreed not to press additional charges against Petitioner for witness tampering. (*Id.*) Petitioner said that was his understanding of the plea agreement as well, and the trial court explained that, due to the change in the habitual offender status, the mandatory minimum sentence of twenty-five years was eliminated. (*Id*. at PageID.106.)

Petitioner was fifty-six years old at the time, and he stated in his colloquy with the trial court that he had no difficulty reading or writing the English language. (*Id*. at PageID.107.) The trial court then read each of the six charges and the maximum

penalties for the crimes. Petitioner assured the trial court that he understood the general nature of the charges and the maximum penalties for each crime. (*Id*. at PageID.108-109.) He also claimed to understand that, if the court accepted his guilty plea, he would be subject to lifetime electronic monitoring. (*Id*. at PageID.109.)

The trial court went on to explain Petitioner's right to a jury trial and all the related rights. (*Id*. at PageID.109-110.) Petitioner stated that he understood his trial rights and the fact that he would be waiving those rights and certain appellate rights if he pleaded guilty. (*Id*. at PageID.110-111.) The trial court then repeated the six criminal charges, and Petitioner pleaded guilty to all six charges. (*Id*. at PageID.111-12.) He stated that it was his choice to plead guilty and that no one had threatened him in any way, nor promised him anything other than what was stated on the record, to make him plead guilty. (*Id*. at PageID.112.)

Defense counsel asked Petitioner several questions to establish a factual basis for Petitioner's guilty plea. During that process, Petitioner acknowledged, for purposes of count six, that he had prior convictions for first-degree CSC and that he was required to update his address quarterly. He stated that, ever though his registered address was his parents' home, he began living with his girlfriend at some point and did not register his new address, as required by SORA. (*Id.* at PageID.113-114, 124.)

For purposes of the CSC counts, Petitioner admitted that, while he was living with his girlfriend and the girlfriend's two daughters, he had sexual intercourse with the older daughter on two occasions when she was between the ages of thirteen and sixteen and that he touched her in a sexual manner on one occasion. He also admitted that he touched his girlfriend's younger daughter in a sexual way for sexual gratification on two

3

occasions when the younger daughter was under the age of thirteen.  (*Id*. at PageID.115-117, 121-124.)

For purposes of the habitual offender notice, Petitioner admitted that he had one prior conviction for unarmed robbery and three prior convictions for first-degree CSC in Macomb County.  (*Id*. at PageID.117-118.)  Petitioner also acknowledged that he had asked his girlfriend to tell a witness not to appear in court and testify against him.  (*Id*. at PageID.118, 124-127.)  When the trial court explained that, due to Petitioner's prior CSC convictions, there would be a mandatory five-year minimum sentence for counts one through five, Petitioner stated that he understood and that he had discussed the matter with his attorney.  (*Id*. at PageID.118-119.)

At the close of the proceeding, Petitioner stated that he was telling the truth and that he was not having any difficulty hearing or understanding the proceedings.  (*Id.* at PageID.128.)  The trial court accepted Petitioner's guilty plea after concluding that the plea was accurate and voluntary.  (*Id.* at PageID.128-129.)

### B.  The Post-Plea Motion and Subsequent Sentence

Three and a half weeks later, on October 23, 2015, Petitioner filed a combined motion to withdraw his guilty plea and to dismiss his attorney.  He claimed that he was coerced into pleading guilty on the original charges and that he still did not know what the complete charges were because no one gave him the discovery packet.  He stated that he was told to admit guilt and that he had said what everyone wanted to hear because he was intimidated.  He also claimed that his attorney had not discussed the charges in depth with him, that he was innocent, and that his plea was not intelligently and voluntarily made. (ECF No. 1, PageID.24-26.)

4

On November 2, 2015, the parties appeared in court for Petitioner's sentencing. Before the presentence report and recommended sentence were discussed, the trial court asked defense counsel to address Petitioner's motion to dismiss the attorney and to withdraw his guilty plea. Defense counsel responded that he had discussed both matters with Petitioner and that Petitioner had indicated to him that he did not wish to pursue the motion and that he was prepared to proceed with sentencing. When the court asked Petitioner if that was a correct statement, Petitioner answered, "Yes, sir. That was some jailhouse lawyer stuff." (ECF No. 9-4, PageID.134.) The trial court replied that it would not consider the motion any further and that it would proceed to sentencing. (*Id*. at PageID.135.)

A discussion on the scoring of the sentencing guidelines followed. At the conclusion of that discussion, the trial court asked Petitioner whether he had anything to say before the court imposed the sentence. Petitioner answered, "Just that I take responsibility for what I did. Shouldn't have done it. Wish I could take it all back." (*Id*. at PageID.143-144.) The court then sentenced Petitioner as a third habitual offender to the following terms of imprisonment: twenty-two to fifty years for the first-degree CSC charges; twenty to thirty years for the second-degree CSC charges; and five to eight years for the SORA charge, with credit for 125 days on all six counts. (*Id*. at PageID.146-147.)

**C.  The First Appeal, Remand for Re-Sentencing, and Second Appeal**

Petitioner, through new counsel, appealed his sentence on the basis that three offense variables used to calculate the sentencing guidelines were incorrectly scored and that he was entitled to re-sentencing. (ECF No. 9-6, PageID.169-170.) On October 10, 2017, the Michigan Court of Appeals affirmed Petitioner's convictions, but remanded his

5

case for re-sentencing because one of the offense variables was incorrectly scored, and the change in the scoring of that offense variable reduced the sentencing guidelines. *See People v. Thompson*, No. 332693, 2017 WL 4518903 (Mich. Ct. App. Oct. 10, 2017). On remand, the trial court imposed the same sentence, which fell within the corrected sentencing guidelines. (ECF No. 9-5.)

Petitioner subsequently appealed his convictions through counsel. He claimed that the trial court abused its discretion when it denied his motion to withdraw his guilty plea and to dismiss his attorney. He argued that he was coerced into pleading guilty in violation of his constitutional rights and that his trial attorney was ineffective. (ECF No. 9-7, PageID.404, 406.) The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *See People v. Thompson*, No. 343953 (Mich. Ct. App. July 11, 2018); ECF No. 9-7, PageID.403. Petitioner raised the same two issues in the Michigan Supreme Court, which denied leave to appeal on December 4, 2018, because it was not persuaded to review the issues. *See People v. Thompson*, 503 Mich. 916; 920 N.W.2d 130 (2018).

### D.  The Habeas Petition and Responsive Pleading

On November 20, 2019, Petitioner filed his *pro se* habeas corpus petition. He raises the same two issues that he presented to the state courts during his second appeal. (ECF No. 1, PageID.5, 7.) Respondent Willis Chapman filed an answer to the petition through counsel. He argues that Petitioner's claims lack merit, that the first claim also is not cognizable on habeas review, and that the state appellate court's rejection of the claims was objectively reasonable. (ECF No. 8, PageID.49-50.) Petitioner did not file a reply.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) (alterations added)).  "Avoiding these pitfalls does not require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.,* at 413, 120 S.Ct. 1495.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  *Id.,* at 410, 412, 120 S.Ct. 1495.  The state court's application of clearly established law must be objectively unreasonable.  *Id.,* at 409, 120 S.Ct. 1495.

*Id.* at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]' "

7

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

### III.  Analysis

#### A.  The Denial of Petitioner's Motion to Withdraw his Guilty Plea

Petitioner alleges that the trial court abused its discretion when it denied his motion to withdraw his guilty plea. The motion alleged that Petitioner was coerced into pleading guilty on the original charges and foregoing a jury trial. He alleged that he did not know the complete charges against him because no one provided him with the discovery packet. He also alleged that he told the court what it wanted to hear because he was intimidated. He maintained his innocence and argued that his plea was not intelligently and voluntarily made. (ECF No. 1, PageID.24-27.)

Petitioner expands on these same claims in his habeas petition and supporting memorandum. He asserts that his plea was entered in violation of the Michigan Court Rules and the Due Process Clauses of the Michigan and Federal Constitutions. He contends that he was pressured and intimidated into pleading guilty and into foregoing a jury trial. He also claims that his plea was unknowing because he did not receive

8

adequate counseling from his trial attorney, he was not advised that he could assert his innocence and demand a jury trial, and he did not fully understand all aspects of the plea agreement. (*Id*. at PageID.5, 18-23.)

Petitioner's claim lacks merit for more than one reason. First, the trial court did not deny Petitioner's motion to withdraw his guilty plea; rather, Petitioner withdrew the motion. The motion was moot at that point. So, the trial court found it unnecessary to consider the motion any further. (ECF No. 9-4, PageID.134-135.)

Second, "[a] defendant does not have an absolute right to withdraw a guilty plea[.]" *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006); *accord United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012); *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005).

Third, the contention that Petitioner's plea was entered in violation of state law is not a cognizable claim because "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Finally, Petitioner has not persuaded the Court that his plea was unknowing or involuntary. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25 (1970)).

9

"A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan*, 426 U.S. 637, 645 n .13 (1976) (internal citation omitted). And "a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' " *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)). In short, to be voluntary and knowing, a guilty plea must be "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970).

Petitioner contends that he did know all the charges, that he did not fully understand the plea agreement, and that he did not realize he could maintain his innocence and have a jury trial. But he had prior criminal experience, having been previously convicted of four felonies, including three for first-degree CSC.

At the plea proceeding, moreover, the charges were stated on the record more than once, and the prosecutor clearly explained the plea agreement. The mandatory minimum sentences and the maximum penalties also were explained to Petitioner, and he stated that he understood the penalties, the general nature of the charges, and the plea agreement. He also claimed to understand that he was waiving his trial rights by pleading guilty, and he must have known that he could maintain his innocence and go to

10

trial, because his plea was taken on the date set for trial, and several potential jurors were already seated in the courtroom.[1]

Furthermore, Petitioner said that that it was his choice to plead guilty and that no one had threatened him to make him plead guilty. He even provided a detailed factual basis for each of the six charges and stated that he had no difficulty understanding the proceedings.

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and the record indicates that he made a voluntary and intelligent choice among the alternative courses of action open to him. He was made aware of the relevant circumstances and the likely consequences of his guilty plea, and he demonstrated his ability to understand the proceedings when he responded to questions put to him by the prosecutor, defense counsel, and the trial court.

The record indicates that Petitioner's guilty plea was voluntary and intelligent. Therefore, the state appellate court's rejection of Petitioner's claim for lack of merit was objectively reasonable, and Petitioner is not entitled to relief on his first claim.

### B. Denial of the Motion to Dismiss Trial Counsel

In his second and final claim, Petitioner alleges that the trial court abused its discretion by denying his motion to dismiss his trial attorney. Petitioner alleges that his attorney did not meet minimum standards for attorney performance, did not counsel him adequately, and did not allow him to assert his trial rights. Petitioner also contends that he was prejudiced by his attorney's performance. (ECF No. 1, PageID.7, 21-22.)

---

[1] The plea proceeding took place in the judge's chambers due to the presence of prospective jurors in the courtroom. (ECF No. 9-3, PageID.103.)

11

Once again, the trial court did not deny Petitioner's motion to dismiss his attorney. Petitioner withdrew the motion and stated that he wanted to proceed with the sentencing. At that point, there was no need to consider whether substitution of counsel was necessary or desirable.

Furthermore, to prevail on a claim that an attorney was constitutionally ineffective, a defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-part test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill*, 474 U.S. at 58.

In plea cases, the first part of the *Strickland* test requires showing that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Id*. at 56-59 (citing *Tollett v. Henderson*, 411 U.S. 258 (1973), and *McMann v. Richardson*, 397 U.S. 759 (1970)). The second or "prejudice" component of the test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. at 59. The defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id*.

The record demonstrates defense counsel's performance was not deficient. The attorney negotiated a plea agreement that provided Petitioner with multiple benefits. Because the fourth-offender status was reduced to third-offender status, there was no mandatory minimum sentence of twenty-five years. (ECF No. 9-3, PageI.106.) Additionally, the prosecutor agreed not to seek consecutive sentences on the first-degree CSC charges (*id*. at PageID.105) and not to press charges against Petitioner for soliciting

someone to tamper with a witness, even though there was evidence that Petitioner had asked his girlfriend to tell a witness not to appear in court and testify against him. (*Id.* at PageID.105, 118.)

Defense counsel also tried to reduce the sentencing guidelines (ECF No. 9-4, PageID.135-143.) Although the trial court did not agree with defense counsel's arguments, the Court of Appeals subsequently found merit in one of the arguments and remanded the case for re-sentencing on that basis. (ECF No. 9-6, PageID.166-167.)

Petitioner has failed to show that his trial attorney's performance was deficient. Therefore, the state appellate court's rejection of Petitioner's claim for lack of merit was not contrary to, or an unreasonable application of, *Strickland* or *Hill*. Petitioner has no right to relief on his claim about his trial attorney and the trial court's denial of his request to dismiss the attorney.

### IV. Conclusion

Petitioner's claims lack merit, and the decision of the Michigan Court of Appeals – that the claims were meritless – was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the petition for a writ of habeas corpus is denied.

The Court declines to issue a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Additionally, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court also denies leave to proceed *in forma pauperis* on appeal from this decision. Although Petitioner was permitted to proceed *in forma pauperis* in this Court (ECF No. 4), an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

IT IS SO ORDERED.

Dated: January 5, 2021

s/Sean F. Cox
Sean F. Cox
U. S. District Judge